Filed 11/17/20  Mateyko v. Mateyko CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| RAYMOND MATEYKO, | B291105 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC057235) |
| v. | |
| MICHAEL MATEYKO, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen Pfahler, Judge.  Affirmed.

John Sullivan for Plaintiff and Appellant.

Raymond M. Sutton for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiff Raymond Mateyko appeals the court's grant of summary judgment in favor of Michael Mateyko, his son, and Hoist Elevator Company (Hoist) (collectively defendants) and its denial of his motion for a new trial.[1] We conclude the court correctly granted defendants' motion for summary judgment and denied Raymond's motion for a new trial based on admissions Raymond made during discovery in the case, and Raymond otherwise did not present evidence that raised a triable issue of fact. We, therefore, affirm the judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

On August 5, 2016, Raymond filed a complaint in which he alleged causes of action for breach of oral contract, breach of fiduciary duty, conversion, unjust enrichment/constructive trust, and money had and received.[2] Hoist is an elevator maintenance and repair business that was founded by Michael in 2005. Raymond contends he was entitled to a share of Hoist's net profits based on an oral agreement among him and his wife (Michael's mother) and Michael.

---

[1] Because Raymond, Michael, and Raymond's brother, Anthony Mateyko, share a last name, we refer to them by their first names to avoid confusion.

[2] In addition to defendants, Raymond sued Michael's wife, Rochelle Buller, and 2117 Venice LLC. On November 21, 2017, Raymond requested dismissal with prejudice of all claims against Buller and 2117 Venice LLC and of the conversion cause of action as to all defendants on February 2, 2018. The court entered the dismissals as requested.

In deposition testimony, Raymond made significant and consequential admissions regarding there being no agreement to share profits; there was no partnership agreement; and he was not a director, officer, or shareholder of Hoist. Among other things, Raymond indicated he did not have an agreement put into writing because Michael was his son, and he believed Michael would fulfill the verbal promises he claimed Michael made to him.

A.    *Defendants' Motion for Summary Judgment*

Defendants filed a motion for summary judgment , which was heard and argued on February 9, 2018. In their motion papers, defendants claimed Raymond could not establish triable issues of material facts existed because Raymond had admitted in his responses to discovery and in deposition testimony that no agreement to share profits existed between him and Michael, and they never entered into a partnership agreement. Additionally, defendants maintained Raymond's causes of action were barred by applicable statutes of limitations because he filed his complaint in 2016, although Raymond admitted to not having received any profits as early as 2008.

In support of the motion, defendants filed a separate statement of undisputed material facts in which they claimed, as relevant to this appeal, Michael started his own elevator repair and service business and incorporated it under the name Hoist, and he was the sole shareholder, director, and officer of the corporation; no oral agreement with Raymond was ever formed; Raymond was owed no fiduciary duty, as neither a confidential relationship nor partnership agreement existed between Raymond and

3

Michael; and relevant statutes of limitations barred all causes of action.

In his declaration in support of his opposition to the summary judgment motion, Raymond stated the following. He went into the elevator maintenance and repair business with Kevin Brockway as his partner, and they started the West Coast Elevator Corporation. Michael joined West Coast after he returned from college in 2004, and Raymond trained him in all aspects of the business. In 2005, the Mateyko family decided to open its own business which became Hoist, and Raymond amicably split with Brockway. Raymond and his wife contributed $40,000 as start-up money for Hoist, and they divided up responsibilities with Michael regarding Hoist. Almost all of Hoist's work resulted from contacts Raymond had from the many years he had worked in the elevator repair business.

Raymond added he and his wife and Michael agreed they would split the net proceeds of large repair or maintenance jobs which were over $100,000. After his wife died, Raymond's relationship with Michael became strained. In early 2009, he approached Michael concerning a split of the net proceeds, and Michael gave him a check for $75,000 from Hoist's account, but Michael soon thereafter asked Raymond to return it. When Raymond resisted, Michael assured him he was good for the money, stated they were "partners for life," and repeatedly promised to pay him bonuses.[3] Raymond believed, since they were family, and he

---

[3] In his declaration and his appellate briefs, it appears Raymond uses the terms "bonuses" and "net proceeds" and the phrase "share of profits" interchangeably.

had contributed much to the business, Michael would keep his promise. However, in 2015, after a verbal altercation with Michael, Michael ordered Raymond out of the business, and when Raymond asked about his share of profits, Michael told him he would be paid. But Michael later denied that he owed Raymond anything.

As proof of an agreement to share profits, Raymond submitted copies of a $75,000 check made out to him by Hoist, one he made out for $75,000 to Michael, and another he wrote to Michael for $10,000. There was a notation on the memorandum line of the $75,000 check to Raymond that read "loan as per contract."[4]

In opposing defendants' summary judgment motion, Raymond asserted factual issues existed with respect to his partnership with Michael; Michael owed fiduciary duties to him; and a constructive trust should be imposed because Michael had retained profits that rightfully belonged to him.

Raymond replied to defendants' statement of undisputed material facts by asserting defendants were estopped from relying on the statute of limitations; he and Michael owed fiduciary duties to each other based on a partnership or agreement to pay Raymond bonuses; Michael told him on numerous occasions Michael would eventually pay him profits from Hoist; and he relied on Michael's promises.

---

[4] Raymond also submitted a declaration from his brother, Anthony. Although that declaration is referenced in defendants' objections to Raymond's evidence and in the court's ruling on the motion , it was not included as part of the record on appeal.

*B.      Plaintiff's Deposition Testimony*

As significant for purposes of the issues on appeal, the court considered certain of Raymond's deposition testimony, as reflected in the series of questions and answers below:

"Q      Okay.  But you mentioned sharing in the profits; right?

A      Yeah.  Yeah.  The profits weren't on the maintenance. The profits were on big jobs . . . And the big repair jobs that's where we were supposed to share the profits.

Q      Okay.  When was the first time that you had an agreement with Michael concerning Hoist?

A      I never had an agreement with him.

Q      Okay.  Was there ever any agreement to be partners?

A      No.  I told him verbally.  I had a choice to give him a percentage of the business or apprenticeship thing, but I figured he's my son.  Let me give him an equal part of it so he has—he has a lot of sail under his—a lot of wind under his sail and he would work harder.  So I told him, 'Look.  We're splitting with Kevin.  We'll start a new company, and we're partners 50/50.'

Q      Okay.  So in this case, have you produced all of the documents, as far as you know, in discovery? ¶ And discovery is the exchange of written questions and answers and documents. ¶ As far as you know, have you provided us with all of the documents that help support your complaint in this case?

A      I think so.

Q      Okay.  Are there any contracts among those documents?

A      No.

Q      Okay.  Why is that?

A      Why would I need a contract?  Contract for what?

Q    For any of your claims to help protect your rights.

A    No.  I never had any contracts with my son because he's my son.  Why would I have a contract?  Everything is verbal with him.  ¶ These were—it was my company, my clients.  I took him as a partner. . . .

Q    So go ahead.  Now, you were mentioning to me that when you were forming Hoist with Michael, you said 'Okay.  We're going to be partners' or words to effect; correct?

A    I—he—I told him it was—when I broke up with Kevin, I told him we were going to be partners.  I never used the term '50/50' or anything like that.  We were going to be partners.

And I told my wife about it, and she said, 'Oh, that's okay'  I brought—I ran it through my wife.  ¶ So I only did that—I didn't have to make him a partner.  He would have stayed—he would have worked for me without being a partner.  I could have gave [*sic*] him a good salary without being a partner.  But I figured I wanted him to take over the business eventually because I can't work forever.  So I'm going to teach him the ropes.  He's going to keep on working.  That was my objective.

Q    Did you express that to Michael?

A    What?

Q    Did you tell that to Michael?

A    No.

Q    What else did you say to Michael in terms of what the terms of the agreement related to Hoist between you and Michael were?  Besides—

A    I had no agreement.  Whatever I said went at the time.

Q    Okay.  So when you and Michael were first forming Hoist, there was no agreement?  It was just what you were telling him?

A    Right.

Q    Okay.  So was there a point in time when you and Michael kind of came to an agreement?  'Okay.  We're partners.'?

A    There was never an agreement.  I just told him we were going to be partners, and he agreed.  He went along with that. . . .

Q    Okay.  Was there ever an agreement between you and Michael to be partners?

A    No.

Q    Okay.

A    Other than verbal.

Q    But that was just you telling him–

A    Yeah."

C.    *The Court's Ruling on the Summary Judgment Motion*

After the hearing on the motion, on February 9, 2018, the court issued a tentative ruling in defendants' favor.  On April 3, 2018, the court adopted the tentative ruling and entered a judgment for defendants.  The court found Raymond's discovery admissions to be determinative and concluded that a contract for sharing profits never existed; Raymond did not discuss with Michael splitting profits after individual jobs; and Raymond and Michael did not have an agreement to be partners. The court also invoked the statute of limitations as a bar to Raymond's breach of contract claim.  It reasoned that even if a profit sharing agreement were in place regarding "big" repair jobs, any breach

had occurred well beyond the two-year statute of limitations for a breach of an oral contract claim.

With respect to the breach of fiduciary duty cause of action, the court held the claim failed because the evidence established no partnership existed between Raymond and Michael. Additionally, the court found Raymond's argument that defendants were estopped from arguing the statute of limitations applied to this claim, because of Michael's alleged representations that he and Raymond were partners for life, was contradicted by Raymond's discovery responses in which he admitted no partnership agreement existed.

The court held the unjust enrichment/constructive trust claim failed because Raymond could not demonstrate the existence of a binding agreement with Michael to share profits, he was defrauded out of the money, Michael owed him a fiduciary duty, or that Michael committed a breach of trust or wrongful act.

The court also found the money had and received cause of action was a common count that depended upon the same facts as Raymond's other causes of action and, because those other claims failed, the money had and received claim also failed.

The court indicated it sustained defendants' objections to certain portions of Raymond's and Anthony's declarations submitted in opposition to the summary judgment motion. The objectionable statements in Raymond's declaration were that he helped to form Hoist; Raymond and his wife contributed $40,000 to start Hoist; Michael agreed with Raymond that Raymond and Raymond's wife would split profits from Hoist on repair or maintenance jobs; Michael assured Raymond that Michael would take care of him because they were "partners for life," and Michael repeated that phrase many times thereafter; and

9

Raymond returned money to Michael and believed he would be repaid based on Michael's promises to him.

The court sustained objections to Anthony's averments concerning Raymond having told him Michael would be joining Raymond and Raymond's wife in the elevator and maintenance business in California; Michael talked about the existence of a partnership agreement between them; Michael acknowledged to him the existence of a partnership; and, although he was unaware of the terms of an agreement, he understood Raymond and Michael continued to be partners until Michael fired Raymond from Hoist.

Notice of entry of the judgment in defendants' favor was filed on April 12, 2018.

### D.    Raymond's Motion for New Trial

On April 26, 2018, Raymond filed a motion for new trial based on purported newly discovered evidence that consisted of a draft settlement agreement and declarations submitted by Raymond and Brockway. The draft settlement agreement indicated Raymond had made claims for "an ownership interest in or a percentage of profits derived from 2117 Venice, Hoist and certain real property" owned by Michael and Buller and that defendants had denied Raymond's claims in this regard. Raymond argued this draft document supported his claim that a partnership existed between him and Michael, and Michael acknowledged money was owed to him. Raymond also maintained that, although he may not have had a formal agreement with Michael, both an informal partnership and a profit-sharing agreement existed.

Defendants opposed the motion, arguing the evidence Raymond submitted was not new because Raymond had such

evidence in his possession for a considerable period of time even before he filed his complaint.  Further, defendants asserted there was no cognizable claim for breach of a contract because there was no underlying partnership agreement and no other basis for a fiduciary relationship.  Defendants also noted Raymond was again attempting to support his claims with declarations that contradicted his prior discovery responses.

On June 4, 2018, the trial court ruled the proffered evidence was not newly discovered and was inadmissible in any event, Brockway's declaration did not support a finding that a partnership existed between Raymond and Michael, and Raymond had conceded in his own discovery admissions that no agreement existed between the parties.  The court sustained defendants' objections to the entirety of Raymond's and Brockway's declarations and found that Raymond had failed to establish a basis for a new trial.

Raymond filed a timely appeal on July 2, 2018.

## DISCUSSION

### A.     Standards of Review

Review of a grant or denial of summary judgment is de novo.  (*Samara v. Matar* (2018) 5 Cal.5th 322, 338.)  The question is whether the moving party was entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Doe v. Good Samaritan Hospital* (2018) 23 Cal.App.5th 653, 661.)  The initial burden is on a defendant to present evidence that either conclusively negates an element of each of plaintiff's causes of action or shows that plaintiff does not possess, and cannot reasonably obtain, evidence necessary to establish at least one element of each cause of action.  (*Aguilar v. Atlantic Richfield Co.*

11

(2001) 25 Cal.4th 826, 853-854.)  Once defendant satisfies this initial burden, the burden shifts to plaintiff to show a triable issue of one or more material facts exists as to the cause of action. (*Id.* at p. 850; Code Civ. Proc., § 437c, subd. (p)(2).)

The reviewing court considers "'"""all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."'" [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'"" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)  "[R]esponsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.)

The grant or denial of a new trial motion is reviewed for abuse of discretion.  (*Martine v. Heavenly Valley Limited Partnership* (2018) 27 Cal.App.5th 715, 722 (*Martine*).)  The court's decision is reviewed on appeal from the judgment.  (Code Civ. Proc. §§ 904.1, subd. (a)(2), 906; *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18; *Hamasaki v. Flotho* (1952) 39 Cal.2d 602, 608.)  On an appeal from the order denying a new trial motion, the appellate court reviews the entire record, including evidence, in order to make an independent determination of whether the error was prejudicial.  (Cal. Const., art. VI, § 13; *Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 158.)  Appellant must affirmatively demonstrate error because it is his or her burden to overcome the presumption of correctness of the court's ruling. (*Martine*, at p. 727.)

12

### B.    Analysis

#### 1.    *The Trial Court's Evidentiary Rulings*

As explained above, the court sustained defendants' objections to certain portions of Raymond's and Anthony's declarations submitted in support of Raymond's opposition to the summary judgment motion and all of Raymond's and Brockway's declarations submitted in support of Raymond's motion for a new trial.  In its written rulings for both motions, the court cited *Benavidez v. San Jose Police Department* (1999) 71 Cal.App.4th 853, 860-861 (*Benavidez*) and expressly stated Raymond could not rely on his declarations to contradict his prior admissions made during discovery.

Because objections to the evidence Raymond discusses in his appellate briefs were sustained by the trial court, and Raymond has not challenged on appeal those evidentiary rulings, he has forfeited any claim of error.  (See *Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 420, fn. 5, citing *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014-1015 [in absence of proper challenge to trial court's evidentiary rulings, appellate court will consider all affected evidence to have been excluded].)

Consequently, our review on appeal is limited to the admissible evidence and not evidence that was subject to well-taken objections.  (See Code Civ. Proc. § 437c, subd. (c) ["[i]n determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, *except the evidence to which objections have been made and sustained by the court . . . .*"  (italics added)].)

13

2.    *The Trial Court Did Not Commit Reversible Error By Granting Summary Judgment in Defendants' Favor*

a.    *Breach of contract*

In support of his contention that the court erred, Raymond argues the existence of a partnership or profit-sharing agreement is a disputed fact that could not be resolved on summary judgment. He asserts he maintained throughout his responses to interrogatory questions and requests for admissions he had a partnership or profit-sharing agreement with Michael. Similarly, he claims in his deposition testimony he had a verbal agreement to split profits with Michael. Raymond then insists such evidence, combined with his brother Anthony's declaration and the payments of two checks to him from Hoist, established the existence of a partnership. Raymond, therefore, contends the trial court committed reversible error by precluding him from "making statements in his opposition that the trial court found contradicted other statements made by [him] in discovery."

Raymond acknowledged no written agreement existed between the parties. Thus, the primary question is whether Raymond provided the court with sufficient evidence of the existence of an oral agreement concerning profit sharing. The prerequisites for establishing the existence of an agreement are the parties being capable of contracting, consenting to contracting, and providing sufficient consideration. (Civ. Code, § 1550.) The parties' consent must be free, mutual, and communicated to each other. (Civ. Code, § 1565.) This mutual consent must be determined by objective, not subjective, considerations. "'"'Contract formation requires mutual consent, which cannot exist unless the parties "agree upon the same thing in the same sense."'"' [Citation.]" "'"The manifestation of mutual consent is generally achieved through the process of offer and

14

acceptance." [Citation.]" "'"'Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." [Citations.]' [Citation.] 'Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed. . . .'"'" (*Pacific Corporate Group Holdings, LLC v. Keck* (2014) 232 Cal.App.4th 294, 309.)

In his opposition to the summary judgment motion, Raymond contends he did offer evidence of the existence of both a partnership and a profit sharing agreement. He points to declarations submitted by himself and others. As discussed, Code of Civil Procedure section 437c, subdivision (c), provides, in pertinent part, "[i]n determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, *except the evidence to which objections have been made and sustained by the court . . . .*" (Code Civ. Proc., § 437c, subd. (c) (italics added).)

Raymond repeatedly relies upon evidence to which evidentiary objections were sustained and disregards the impact of the court's rulings in that regard. Raymond cannot rely upon those averments in his or Anthony's declarations, to which the court sustained defendants' objections, to show the existence of a triable issue. As discussed, Raymond does not argue the court abused its discretion with respect to its evidentiary rulings.

"Summary judgment law . . . no longer requires a defendant moving for summary judgment to conclusively negate an element of the plaintiff's cause of action. . . . [Citation.] Instead, a defendant may simply show the plaintiff cannot establish an essential element of the cause of action 'by showing that the

15

plaintiff does not possess, and cannot reasonably obtain, needed evidence.' [Citation.] Thus, . . . a defendant moving for summary judgment has the option of presenting evidence reflecting the plaintiff does not possess evidence to prove that element. . . . Under [this] approach, a defendant's initial evidentiary showing may 'consist of the deposition testimony of the plaintiff's witnesses, the plaintiff's factually devoid discovery responses, or admissions by the plaintiff in deposition or in response to requests for admission that he or she has not discovered anything that supports an essential element of the cause of action.' [Citation.] In other words, a defendant may show the plaintiff does not possess evidence to support an element of the cause of action by means of presenting the plaintiff's factually devoid . . . responses from which an absence of evidence may be reasonably inferred. [Citation.]" (*Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1102-1103.)

Under the circumstances of this case, Raymond did not establish there was a genuine issue of material fact concerning the existence of an oral agreement between the parties. In his deposition testimony, Raymond admitted he never communicated to Michael his belief that a partnership and a profit sharing agreement existed. Although Raymond disavowed the admissions he made at his deposition and claims there were triable issues of material fact, he cannot rely on contradictions in his own testimony to create triable issues. (*Benavidez*, *supra*, 71 Cal.App.4th at p. 861.)

In the instant case, defendants met their initial burden by showing through admissions Raymond made in his deposition testimony that he was not in a partnership with Michael and no agreement for profit sharing with Michael existed. Defendants also demonstrated that Raymond did not possess evidence to

16

support his claims. Rather, Raymond believed a partnership and profit sharing agreement were in place, but he provided no evidence he ever told Michael he held this belief or that Michael otherwise shared that belief, which are critical elements for the formation of a contract. The absence of evidence supporting Raymond's claims could be reasonably inferred from Raymond's deposition testimony because such testimony was factually devoid of any evidence of the existence of a partnership or an oral profit sharing agreement. (*Leyva v. Garcia, supra*, 20 Cal.App.5th at pp. 1102-1103.)

Because there was no evidence there ever was a meeting of the minds or mutual consent that led to the formation of a partnership or profit sharing agreement as between Raymond and Michael, the court did not err in granting defendants' summary judgment motion with respect to the breach of contract cause of action.

As we conclude the court correctly granted summary judgment in defendants' favor on the basis that there was no genuine issue of material fact concerning the existence of a partnership or profit sharing agreement between the parties, we need not address Raymond's other contentions relating to the breach of contract claim, including the issue of whether Raymond's claims are barred by the applicable two-year statute of limitations.

b.      *Breach of fiduciary duty*

Raymond's breach of fiduciary duty cause of action was predicated on his assertion that he and Michael were partners and on the basis that they are father and son. But Raymond's contention in this regard also fails. First, Raymond did not demonstrate there was a triable issue of material fact concerning

17

whether a fiduciary relationship existed between him and Michael based on some partnership that was in place. A partnership is defined by statute as "the association of two or more persons to carry on as co-owners a business for profit . . . whether or not the persons intend to form a partnership." (Corp. Code, § 16202, subd. (a).) A person is not a partner by virtue of receiving benefits from the business for services rendered or for a capital contribution; rather an essential element of a partnership involves the right of joint participation in the management and control of the business. (*Kaljian v. Menezes* (1995) 36 Cal.App.4th 573, 586.) Nor does receiving a share of the profits of a business as payment for services as an independent contractor makes an individual a partner. (Corp. Code, § 16202, subd. (c)(3)(b).) Moreover, Raymond admitted at his deposition that no partnership existed between him and Michael.

Second, Raymond does not provide authority for his proposition that Michael owed him a fiduciary duty simply because Michael is his son. For that reason, this contention has been forfeited. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration"].) Nonetheless, even on the merits, such a familial relationship does not automatically create fiduciary duties. (*Briggs v. Nilson* (1964) 226 Cal.App.2d 342, 346.)

c.      *Unjust enrichment/constructive trust*

Raymond's unjust enrichment/constructive trust cause of action fails because he does not present a cogent legal argument with citations to authority and the record that supports this claim. As such, his contention that the court erred in entering

18

summary judgment on this claim is forfeited.  (*Allen v. City of Sacramento*, *supra*, 234 Cal.App.4th at p. 52.)

### d.    *Money had and received*

As explained above, the claims underlying Raymond's cause of action for money had and received were properly subject to summary disposition.  When a common count for money had and received "is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable."  (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394.)

Therefore, in the instant case, Raymond's separate common count for money had and received must also fail, and we uphold the grant of summary judgment as to it.

### 3.    *Raymond's Motion for New Trial*

Raymond argues the court erred because it did not accept the newly discovered evidence he presented and denied his motion for new trial.

Code of Civil Procedure section 657 provides a judgment may be vacated based on newly discovered evidence if the involved party could not have, with reasonable diligence, discovered and produced the evidence at the trial.  Raymond offered as the newly discovered evidence supporting his motion for a new trial what he claimed to be a draft settlement agreement between himself and defendants that was drafted before Raymond filed his complaint and Brockway's declaration.

In his declaration, Brockway stated he partnered with Raymond in forming West Coast.  He added Raymond supervised Michael's work.  Michael had urged Raymond to buy West Coast,

19

but Raymond declined, and instead Brockway and Raymond split up West Coast's accounts. Brockway then agreed to give Raymond and Michael many of West Coast's accounts.

Raymond admitted he was aware of the draft settlement agreement nearly a year before he filed the subject lawsuit. Also, in response to written discovery propounded by defendants, Raymond had identified Brockway, as a witness who would support his claims. Therefore, Raymond had ample time to secure Brockway's declaration for purpose of opposing the summary judgment motion. In fact, Raymond filed his motion for new trial on April 27, 2018. But Brockway signed his declaration on January 15, 2018, and the document states it is in support of Raymond's mandatory settlement conference scheduled to take place on January 25, 2018.

Even if the submission of Brockway's declaration were considered timely, given the substance of Brockway's statements, there was no indication they were material because they do not establish that a profit sharing agreement, let alone a partnership, existed between Raymond and Michael.

Further, the court has discretion to admit or exclude evidence, and it sustained defendants' objections to Raymond's and Brockway's declarations in their entirety. In this instance, Raymond offers no argument that the court, by excluding the declarations, exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a miscarriage of justice.[5]

---

[5] Raymond asserts alternative grounds for a new trial are insufficiency of the evidence to justify a decision or the decision is contrary to law. However, Raymond's deposition testimony established that no oral agreement to share profits and no

As such, we conclude the court properly exercised its discretion in denying the motion for a new trial.

## DISPOSITION

The orders granting defendants' motion for summary judgment and denying Raymond's motion for a new trial and the judgment are affirmed.  Defendants to recover their costs on appeal.


RICHARDSON, J.*


We concur:


PERLUSS, P. J.


FEUER, J.

---

partnership existed, and the *Benavidez* case dictates that Raymond cannot create triable issues of fact by later presenting statements contradicting those admissions.

*	Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.