Filed 1/20/22  Thompson v. City of Pasadena CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| RICHARD THOMPSON, | B302316 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC668717) |
| v. |  |
| CITY OF PASADENA, |  |
| Defendant and Appellant. |  |

APPEALS from orders of the Superior Court of Los Angeles County, Lia Martin, Judge.  Affirmed.

McNicolas & McNicholas, Patrick McNicholas, Michael J. Kent; Esner, Chang & Boyer and Andrew Chang for Plaintiff and Appellant.

Gutierrez, Preciado & House, Calvin House; Michele Beal Bagneris, City Attorney, and Javan Rad, Chief Assistant City Attorney, for Defendant and Appellant.

_____

Richard Thompson sued the City of Pasadena for retaliation in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.) and Labor Code section 1102.5. A jury found in Thompson's favor on the FEHA claim and for the City on his Labor Code claim. The trial court granted a partial judgment notwithstanding the verdict for the City, finding no substantial evidence of constructive discharge to support the jury's award of economic damages on the FEHA claim, and denied the City's motion for judgment notwithstanding the verdict to the extent it argued there was no substantial evidence Thompson had suffered an adverse employment action or that such action was substantially motivated by Thompson's FEHA-protected activity. However, the court granted the City's motion for new trial on the FEHA cause of action citing an error in law based on a material omission in the special verdict form, excessive damages and insufficiency of the evidence as to economic damages.

On appeal from the order granting a new trial, Thompson contends no error in law required a new trial and substantial evidence supported the jury's damages award. In a cross-appeal from the partial denial of its motion for judgment notwithstanding the verdict, the City contends there was no substantial evidence Thompson suffered an adverse employment action as a result of engaging in protected activity under FEHA. We affirm.[1]

_____

[1] Both the order granting the City's new trial motion and the order denying in part the City's motion for judgment notwithstanding the verdict are appealable orders. (Code Civ. Proc., § 904.1, subd. (a)(4).) Thompson's appeal also challenges

2

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Trial*

    a. *Thompson's case*

Thompson, a trained plumber, worked for the City for 23 years, most recently as a utility service planning supervisor in both the water and power supply divisions. In 2012 Aurora Isabel, a City employee in a different department, sued the City for discrimination, retaliation and sexual harassment in violation of FEHA, alleging, in part, she was denied a promotion due to discrimination and retaliation by her direct supervisor. In May 2014, while Isabel's lawsuit was pending, the City transferred her to Thompson's department. The City's human resources director told Thompson that Isabel had a pending lawsuit against the City and that, when evaluating her, he should take a "kinder and softer" approach.

In September 2015 Thompson wrote a favorable performance evaluation for Isabel, recommending her for a promotion. He shared his performance review with Isabel. Thompson testified at trial he did not know much about Isabel's pending lawsuit at the time he wrote her performance review and did not fill out the evaluation with that in mind. Thompson's actions angered his supervisor, Joe Awad, who told Thompson he violated City policy by not obtaining Awad's approval before recommending a subordinate for a promotion. Thompson had recommended other people for promotion without consequences and was surprised by Awad's reaction.

---

the order granting the City a partial judgment notwithstanding the verdict on economic damages. As discussed in section 2, that order is not appealable prior to a final judgment in the matter.

Following Thompson's favorable performance evaluation for Isabel and his truthful testimony at her trial in November 2015, Thompson asserted, the City retaliated against him: Neither Awad nor the human resources department helped Thompson when he requested assistance to address insubordination by employees he supervised. In addition, under the guise of a reorganization, the City transferred him to the water division, where he would have no employees to supervise. Because he would no longer be supervising Isabel, he also lost the discretionary anti-compaction pay—the additional pay he had received for supervising a person at or above his employee classification. Thompson told the City's human resources manager that he believed he was being blacklisted because of his favorable testimony for Isabel.

In August and September 2016 Thompson complained to the human resources department about Fredy Hidalgo, one of the employees he had formerly supervised and who had engaged in acts of overt insubordination. (Hidalgo had sent an email highlighting Thompson's removal as a supervisor, which Thompson thought was disrespectful.) Human resources did not address Thompson's complaint. In addition, when another employee complained about Thompson, Thompson's supervisor denied him the opportunity to participate in the grievance meeting.

In October 2016, citing extreme stress, Thompson took a medical leave of absence on the recommendation of his psychiatrist.

In November 2016 the City contacted Thompson to identify his new supervisor in the water division, Natalie Ouersloot. Thompson did not respond. Thompson knew the same individual

who had been the subject of Isabel's ongoing lawsuit (the first trial ended in a mistrial) was the assistant manager in the water division and would ultimately, albeit not directly, oversee Thompson's work.

In April 2017 the City's disability consultant invited Thompson to engage in the interactive process to explore potential accommodations upon his return to work. Thompson did not respond to any of the consultant's efforts to contact him.

In May 2017, after exhausting his sick leave and vacation time, Thompson resigned. Asked at trial about his decision to resign, Thompson explained he thought he was being set up to fail. "I've seen how they treat people like this before in Pasadena. You're an outcast. You're considered damaged goods. You're no longer relied on for anything. You're put in a box somewhere and that's where you sit." Thompson also testified that, while no one had told him so directly, his reassignment would necessarily cause him to lose certain privileges of management, such as his private office and use of a City vehicle, both of which were associated with supervisors in the utility's power division. The loss of such privileges, and the respect they commanded within his workplace, Thompson testified, undermined his self-esteem and caused him extreme anxiety and depression. Thompson claimed he suffered noneconomic damages, including emotional distress, from the demotion to the water division and economic damages from a constructive discharge.

b. *The City's case*

The City's position at trial was that there was no retaliatory motive, no demotion and no constructive discharge. According to the City, while Thompson had received favorable performance reviews throughout much of his career at the City,

5

in 2013 and 2014, before he began supervising Isabel, Hidalgo had complained to Thompson's superiors about Thompson's unprofessional behavior (belching, farting and use of foul language). After Thompson testified at Isabel's trial, the City did not retaliate. To the contrary, Awad signed the paperwork for him to receive anti-compaction pay and provided Thompson with a managerial coach to help him address his lack of "people skills" that were the subject of frequent employee complaints about him. Thompson testified he had welcomed the coaching to improve his management style.

In April 2016 Awad left the City's employ and was replaced with Varoojan Avedian. After observing Thompson's department and receiving internal and customer complaints about it, Avedian determined Thompson's group was dysfunctional. He decided a reorganization was necessary and separated the water service planning group from the power service planning group. Thompson, whose experience was in plumbing, was reassigned to the water services division. Although Thompson had asked for Isabel to join him, the City could not transfer Isabel to a department ultimately managed by the supervisor who was the subject of her still-pending lawsuit.

Thompson responded to these changes by taking stress leave. He did not reply to any of the City's efforts to contact him to discuss his new position. When his leave was exhausted, he resigned.

2. *Jury Instructions*

During the colloquy over jury instructions, Thompson asserted his favorable written performance review of Isabel and his testimony at her trial each constituted protected activity under FEHA. The City argued the act of writing a favorable

performance review did not constitute FEHA-protected activity. The court agreed with Thompson that, if the City perceived his performance review would make him a hostile witness to the City in Isabel's FEHA lawsuit, it was protected activity under FEHA. The court instructed the jury with a modified version of CACI No. 2505 that the performance review could be protected activity if the City perceived it would result in Thompson being called as a witness against the City at Isabel's trial.[2]

The court also instructed, "Richard Thompson must prove that he was subjected to an adverse employment action.  Adverse

---

[2] The court instructed the jury, "Plaintiff Richard Thompson claims that the City of Pasadena retaliated against him for testifying at the trial of Aurora Isabel's discrimination lawsuit against the City of Pasadena and/or writing a favorable evaluation for Aurora Isabel that made the City perceive Richard Thompson to be a witness for Aurora Isabel in her lawsuit against the City of Pasadena.  To establish this claim, Richard Thompson must prove all of the following:  [¶] One, that Richard Thompson testified at the trial of Aurora Isabel's discrimination lawsuit against the City of Pasadena or wrote an evaluation for Aurora Isabel that made the City of Pasadena perceive that Richard Thompson was opposing them as a witness for Aurora Isabel in her lawsuit against the City of Pasadena.  [¶] Two, that the City of Pasadena subjected Richard Thompson to adverse employment actions.  [¶] Three, that Richard Thompson's testimony or writing the evaluation that made the City perceive that Richard Thompson was opposing it as a witness for Aurora Isabel in her lawsuit against the City of Pasadena was a substantial motivating reason for the adverse employment actions.  [¶] Four, Richard Thompson was harmed.  [¶] Five, the City of Pasadena's decision to subject Richard Thompson to adverse employment action was a substantial factor in causing his harm."

7

employment actions are not limited to ultimate actions, such as termination or demotion.  There is an adverse employment action if the City of Pasadena has taken on—has taken an action or engaged in a course or pattern of conduct that, taken as a whole, materially and adversely affected the terms, conditions or privileges of Richard Thompson's employment.  An adverse employment action includes conduct that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion.  However, minor or trivial actions or conduct that is not reasonably likely to do more than anger or upset an employee cannot constitute an adverse employment action."

Because Thompson alleged one of the adverse employment actions he had suffered (but not the only one) was constructive discharge, in accordance with CACI No. 2510 the court instructed, "To establish constructive discharge Richard Thompson must prove the following:  That the City of Pasadena's officers, directors, managing agents, or supervisory employees intentionally created or knowingly permitted working conditions to exist that were so intolerable that a reasonable person in Richard Thompson's position would have had no reasonable alternative except to resign, and that Richard Thompson resigned because of these working conditions."

3. *The Special Verdict Form*

As to the FEHA cause of action, the special verdict form prepared by Thompson's attorneys and submitted to the jury without objection by the City asked the jury whether Thompson had testified at Isabel's trial "and/or wr[o]te a favorable evaluation for Aurora Isabel that made Richard Thompson a witness for Aurora Isabel in her lawsuit against the City of

8

Pasadena[.]"  The form did not include the language from the jury instruction concerning the City's perception of the performance review.  Question six of the special verdict form made clear, in accordance with Thompson's complaint and statements to the court, the jury was to address economic damages only if it found Thompson had suffered a constructive discharge.[3]

As to the Labor Code section 1102.5 violation,[4] the verdict form asked in part, "Was Richard Thompson's refusal to provide

---

[3]	On the FEHA violation, the verdict form contained six questions:  "Question 1:  Did Richard Thompson testify at the trial of Aurora Isabel's discrimination lawsuit against the City of Pasadena, and/or write a favorable evaluation for Aurora Isabel that made Richard Thompson a witness for Aurora Isabel in her lawsuit against the City of Pasadena?"  "Question 2:  Did City of Pasadena subject Richard Thompson to adverse employment action(s)?"  "Question 3:  Was Richard Thompson's participation in Aurora Isabel's lawsuit against the City of Pasadena, and/or his writing of a favorable performance evaluation which made Richard Thompson a witness in the Aurora Isabel lawsuit, a substantial motivating reason for City of Pasadena's decision to subject Richard Thompson to adverse employment action(s)?"  "Question 4:  Was City of Pasadena's conduct a substantial factor in causing harm to Richard Thompson?"  "Question 5:  What are Richard Thompson's non-economic damages?"  "Question 6:  If you have reason for finding that constructive discharge was an adverse [employment] action, what are Richard Thompson's economic damages?"

[4]	Labor Code section 1102.5 generally prohibits retaliation against an employee who reports a violation of federal or state law.  Section 1102.5, subdivision (c), prohibits retaliation "for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation."

9

false testimony during the trial of *Aurora Isabel v. City of Pasadena* a contributing factor in the City of Pasadena's decision to subject him to adverse employment action(s)?"

### 4. *The Jury's Verdict*

The jury answered "yes" to all questions on the special verdict form relating to the City's liability under FEHA and found Thompson had suffered $500,000 in noneconomic damages and $162,000 in economic damages from a constructive discharge. It found the City not liable on the Labor Code claim, answering "no" to the question whether Thompson's refusal to provide false testimony during Isabel's trial was a contributing factor in the City's decision to subject him to an adverse employment action. The court entered judgment on the jury's verdict.

### 5. *The City's Motions for Judgment Notwithstanding the Verdict and New Trial*

Following the verdict and entry of judgment, the City moved for judgment notwithstanding the verdict and/or a new trial. In its motion for judgment notwithstanding the verdict, the City argued there was no substantial evidence of an adverse employment action or causation. It also argued there was no substantial evidence of constructive discharge to support the jury's award of economic damages.

The City's new trial motion focused on the omission of critical language in the special verdict form. The City argued the jury's rejection of Thompson's Labor Code claim meant the jury likely found the positive performance review for Isabel, not Thompson's testimony at her trial, was protected activity, and the special verdict form failed to explain that activity was protected only if the City perceived it meant Thompson would be called as a favorable witness for Isabel at her trial. The City also

10

argued a new trial was warranted on the grounds of insufficient evidence and excessive damages because there was no substantial evidence of constructive discharge to support the jury's award of economic damages.

The trial court granted the City's motion for judgment notwithstanding the verdict in part, agreeing with the City there was no substantial evidence of constructive discharge to support an award of economic damages. The court otherwise denied the motion, concluding there was sufficient evidence of an adverse employment action and causation to support the verdict.

The court granted the City's new trial motion in full, concluding a new trial was proper on grounds of "[e]rror in the law occurring at the trial, and excepted to by [the] City." The court explained, "When the court and counsel settled upon the jury instructions and the special verdict form, the City objected to the inclusion of language about the favorable performance evaluation. Plaintiff persuaded the court to include the language in CACI 2505 and on the special verdict form. The court should not have allowed the language to be included without also requiring written language about whether the City perceived plaintiff's writing of a favorable performance evaluation for [Isabel] to be opposition to discrimination. The only way to rectify the error is to grant the motion for new trial."

The court also granted the new trial motion for lack of substantial evidence and excessive damages, finding as to both there was no substantial evidence of constructive discharge to support the jury's economic damage award. The court stated, "At the time of plaintiff's resignation, he had been on disability leave. He had never reported to his new assignment in the Water Engineering Section of the Water Division. His base salary was

11

the same.  His title had not changed.  The City had hired a third-party consultant to work with plaintiff and to determine what his goals, going forward, were.  Objectively, these actions do not constitute working conditions that amounted to a constructive discharge."

Thompson filed a timely notice of appeal from the order granting a new trial and identified the order granting a partial judgment notwithstanding the verdict for the City as an order encompassed by its appeal from the new trial order.  The City filed a timely cross-appeal from the order denying in part its motion for judgment notwithstanding the verdict.

## DISCUSSION

1. *The Court Did Not Abuse Its Discretion in Granting the City's New Trial Motion*

    a. *Standard of review*

We review the order granting a new trial for an abuse of discretion.  (*Lane v. Hughes Aircraft Co.* (2002) 22 Cal.4th 405, 409; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 859-860.)  "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.  This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter.  So long as a reasonable or even fairly debatable justification of the law is shown for the order granting the new trial, the order will not be set aside." (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387; accord, *Jackson v. Park* (2021) 66 Cal.App.5th 1196, 1213; *Simers v. Los Angeles Times Communications, LLC* (2018) 18 Cal.App.5th 1248, 1275-1276 (*Simers*).)

b. *The court's determination a new trial was warranted based on a material omission in the special verdict form was not an abuse of discretion*

Thompson contends the court abused its discretion in granting a new trial based on an error in the special verdict form. Although he concedes the verdict form omitted critical language limiting the performance review as protected activity only if the City perceived it would make Thompson a witness adverse to it in Isabel's trial (see Gov. Code, § 12940, subd. (h) [prohibiting retaliation by employer against "any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part"]; *Steele v. Youthful Offender Parole Bd.* (2008) 162 Cal.App.4th 1241, 1255 ["[e]mployer retaliation against employees who are believed to be prospective complainants or witnesses for complainants undermines [FEHA's] legislative purpose just as effectively as retaliation after the filing of a complaint"]; see also Cal. Code Regs., tit. 2, § 11021, subd. (a)(1)), he contends the omission was not an error in law that justified granting a new trial. Thompson emphasizes the court had instructed the jury in accordance with a modified CACI No. 2505 that the positive performance evaluation for Isabel would be protected only if the City perceived it would make Thompson a hostile witness at Isabel's trial and told the jury to refer to its instructions when answering the questions on the special verdict form.[5] Accordingly, Thompson argues, there was simply no possibility for jury confusion.

---

[5] The court stated, "I will give you a verdict form with questions you must answer. I have already instructed you on the law that you are to use in answering these questions."

The court's explanation for ordering the new trial, Thompson continues, is not supported by the record. In its order the court stated, "Plaintiff's writing of a favorable performance evaluation for the employee he supervised [Isabel] does not constitute protected activity absent evidence the City perceived that this action made plaintiff a potential witness. The parties stipulated the employee had brought a discrimination lawsuit against the City and a supervisor. The trial evidence showed that plaintiff was called as a witness, and that the plaintiff was questioned about the evaluation. There was no record from [Isabel]'s trial introduced. There was no evidence produced to show whether plaintiff was called as a witness pursuant to Evidence Code section 776 [hostile witness]. On the cause of action alleging a violation of Labor Code section 1102.5, the jury did not find the plaintiff's act of giving testimony at the trial to have contributed to the City's adverse actions against him."

The court's comments are problematic, Thompson asserts, because the evidence was undisputed that Thompson had testified favorably for Isabel at her trial, making the lack of any further evidence of his testimony at that trial unnecessary. In addition, the jury's rejection of Thompson's Labor Code claim did not make the verdicts on Thompson's two claims inconsistent. The jury was instructed in accordance with CACI No. 4603 that, to find the City liable on the Labor Code section 1102.5 claim, Thompson was required to prove the City retaliated against him for failing to commit an unlawful act, that is, refusing to provide false testimony at Isabel's trial. The jury could well have found that he did not refuse to provide false testimony, but nonetheless found the City retaliated against him for testifying favorably for Isabel at her trial. In other words, Thompson asserts, the jury's

14

verdict on the two claims was neither inconsistent nor suggested the jury relied on the performance evaluation rather than the trial testimony as the basis for the protected activity.

Thompson's observations are certainly sound. The verdicts are not inconsistent, for the reasons Thompson identifies; nor is it clear the jury found the performance evaluation for Isabel but not Thompson's testimony at Isabel's trial to be protected activity. Nevertheless, without speculating on the reasons the court prefaced its comments with the statements Thompson now challenges as misguided, the trial court explained there remained a good probability the jury found the performance evaluation was protected activity and, because of the omission in the special verdict form, did so without regard to the City's perception.[6]

Thompson's contention the court's proper CACI No. 2505 instruction and admonishment to the jury to refer to its instructions when filling out the special verdict form, taken together, rendered any error in the special verdict form harmless is reasonable. So, too, however, was the trial court's

---

[6] Thompson's suggestion the City forfeited any challenge to the special verdict by failing to object to it at trial is mistaken. The City properly raised the issue in the motion for new trial (see generally *All-West Design, Inc. v. Boozer* (1986) 183 Cal.App.3d 1212, 1220 [a challenge to verdict form may be properly raised for first time in a motion for new trial]), and the court was well within its powers to consider it. (See *Malkasian v. Irwin* (1964) 61 Cal.2d 738, 747 ["If the trial court had denied the new trial such an error [in special verdict form] would be considered waived by failure to object. But the trial court has broad discretion in considering motions for new trial"]; *Neal v. Montgomery Elevator Co.* (1992) 7 Cal.App.4th 1194, 1199 [same].)

determination that the omission of critical language in the special verdict form on a hotly disputed issue—the City's perception of the performance evaluation—was materially misleading and necessitated a new trial. Because that determination is neither arbitrary nor irrational, we must affirm the order granting a new trial. (See *People v. Ault* (2004) 33 Cal.4th 1250, 1255 ["an order granting, as opposed to denying, a new trial is reviewed liberally, particularly with regard to the trial court's finding that an error or irregularity in the original trial was prejudicial"]; *Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 159 ["our review for abuse of discretion extends to all aspects of the court's order granting a new trial, including the court's prejudice ruling"]; see generally *Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 821 ["an appellant seeking to overturn a trial court's discretionary ruling [granting a motion for new trial] faces 'more than a daunting task [and] an uphill battle' in demonstrating the court exercised its discretion arbitrarily and unreasonably"]; *Johnson & Johnson Talcum Powder Cases* (2019) 37 Cal.App.5th 292, 336-337 ["'[a]n order granting a new trial "will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears"'"].)[7]

---

[7] The trial court also ordered a new trial because it found no substantial evidence of constructive discharge to support the jury's award of economic damages. Having found the new trial order proper based on the omission in the special verdict form, we do not reach the court's alternate ground.

16

2. *The Court's Order Partially Granting Judgment Notwithstanding the Verdict Is Not Reviewable Absent a Final Judgment*

Thompson contends the trial court erred in granting a partial judgment notwithstanding the verdict on the ground there was no substantial evidence of constructive discharge to support an award of economic damages.  However, that order is neither separately appealable (as Thompson implicitly recognized when he did not appeal from that order) nor reviewable on an appeal from an order granting a new trial.  (See *Cobb v. University of So. California* (1995) 32 Cal.App.4th 798, 804 [holding the order granting partial new trial was appealable while the "order granting partial judgment notwithstanding the verdict is not listed in [Code of Civil Procedure] section 904.1 and is hence not appealable"; "[a]ny issue concerning the order granting a partial judgment notwithstanding the verdict can be reviewed by the filing of a petition for extraordinary relief [citation] or once a final judgment is entered"]; *Walton v. Magno* (1994) 25 Cal.App.4th 1237, 1240 [under one final judgment rule, partial grant of judgment notwithstanding the verdict is not appealable; the matter is reviewable only after final judgment is entered in the case].)

Relying on *Beavers v. Allstate Ins. Co.* (1990) 225 Cal.App.3d 310, 330 (*Beavers*), Thompson argues a partial grant of judgment notwithstanding the verdict, while not an appealable order under Code of Civil Procedure section 904.1, is nonetheless reviewable on appeal from a new trial order.  We do not agree with the analysis in *Beavers* and decline to follow it.

In *Beavers*, *supra,* 225 Cal.App.3d 310, after a jury verdict awarding plaintiff compensatory and punitive damages, the trial

17

court granted a partial judgment notwithstanding the verdict as to punitive damages and certain causes of action (fraudulent concealment and intentional infliction of emotional distress) and ordered a new trial on all remaining causes of action. Both the plaintiff and the defendant appealed. On appeal the plaintiff argued the trial court lacked the authority to grant a partial judgment notwithstanding the verdict. The *Beavers* court rejected this argument, likening the court's power to grant a partial judgment notwithstanding the verdict to its power to grant a directed verdict on an issue in a case. (*Id.* at p. 332.)

The court also explained a partial judgment notwithstanding the verdict "does not violate the one judgment rule and is consistent with and readily conformable to existing practice with respect to new trial orders." (*Beavers, supra,* 225 Cal.App.3d at p. 329.) That is, when a partial new trial is granted, the new trial order "has the effect of vacating the entire judgment and holding in abeyance the portions which are not subject to a new trial until one final judgment can be entered." (*Ibid.*) "'As there can be only a single judgment in an action, if the order granting the limited new trial of damages is to stand, there will be no final judgment until the trial of that issue ends and the determination of the appeal, if any, from the then judgment. [¶] If the order does not stand, the judgment set aside by the order for new trial would be restored and then become final unless reversed.' [Citation.] Were the rule otherwise, two appealable judgments would be entered in violation of the one judgment rule. [¶] A similar result obtains here. A motion for judgment notwithstanding the verdict essentially asks the trial court to vacate the judgment entered on the verdict and to enter a new judgment despite the verdict. An order granting partial

judgment notwithstanding the verdict has the effect of modifying the judgment on the verdict.  If the trial court otherwise upholds the verdict, then the judgment, as modified by the partial judgment notwithstanding the verdict, is immediately appealable.  Where, however, the trial courts grants a [partial] new trial on issues which are not affected by the judgment notwithstanding the verdict, the new trial order must be held to have the effect of vacating and holding in abeyance the entire judgment, as modified by the order granting judgment notwithstanding the verdict, until one final judgment can be entered." (*Id*. at p. 330.)

So far, the *Beavers* court's explanation of the one final judgment rule is consistent with well-settled jurisprudence. However, in the next paragraph, the one upon which Thompson relies, the *Beavers* court continued, "There is one exception to the rule that a partial new trial order vacates and holds in abeyance the entire judgment.  The exception occurs when the judgment retains sufficient vitality to support appellate review if the matter is otherwise properly brought before the appellant court. A new trial order . . . is an appealable order.  [Citation.]  Where an aggrieved party appeals from a new trial order, then the entire judgment is subject to appellate review at that time. (*Spencer v. Nelson* (1947) 30 Cal.2d 162, 164.)  'One effect of an order granting a new trial is, of course, to vacate the judgment; however, when an appeal is taken from such an order the vacating effect is suspended, and the judgment remains effective for the purpose of an appeal from the judgment.' (*Id*. at p. 164.) That is also the situation here.  [¶]  The trial court granted partial judgment notwithstanding the verdict and granted a new trial as an alternative to the partial judgment notwithstanding

19

the verdict and as to all other issues.  Since plaintiffs have properly appealed from the new trial order, the judgment, including the portion affected by the judgment notwithstanding the verdict, is subject to review in this appeal." (*Beavers,* at p. 330.)

The only authority *Beavers* cited to justify the exception it created to the one final judgment rule, *Spencer v. Nelson, supra,* 30 Cal.2d 162 (*Spencer*), does not support the court's analysis.  In *Spencer* the trial court had granted the plaintiff's motion for a new trial, but limited the new trial to a single issue.  The plaintiff appealed the new trial order, contending a full retrial was required.  The plaintiff also appealed from the judgment as a "purely precautionary" matter in the event the trial court's order for a limited retrial was deemed, in essence, to be a nonappealable denial of the new trial motion or he was found to lack standing to appeal the new trial order because he was not aggrieved by an order granting in part his motion. (*Id.* at p. 164.) The defendant moved to dismiss both appeals.

The *Spencer* Court denied the motion to dismiss the plaintiff's appeal from the new trial order, finding the plaintiff had properly appealed from an order granting a new trial—an appealable order—and had standing as an aggrieved party due to the limited nature of that order.  (*Spencer, supra,* 30 Cal.2d at p. 164.)  Turning to the plaintiff's protective appeal from the judgment, the Supreme Court stated, while a new trial order has the effect of vacating the judgment, "when an appeal is taken from such an order the vacating effect is suspended, and the judgment remains effective for the purpose of appeal from the judgment." (*Ibid.*)  Because it was "plain" the effect of the appeal of the new trial order would be to grant a new trial in one form or

another, either limited or unlimited, the Court found "the judgment will inevitably be vacated, and the ordinary provisional effect of such vacation pending appeal from the order granting a new trial may be disregarded." (*Id.* at p. 165.) "This being so," the Court dismissed the appeal from the vacated judgment. (*Ibid.* ["[t]he appeal from such vacated judgment may therefore be properly dismissed"].)

Nothing in *Spencer, supra,* 30 Cal.2d 162 supports the *Beavers* court's exception to the one final judgment rule to allow review of an order granting a partial judgment notwithstanding the verdict in the absence of a final judgment or justifies a departure from well-established authority on that question. (See *Pacific Corporate Group Holdings, LLC v. Keck* (2014) 232 Cal.App.4th 294, 304 ["[t]he exception referred to in *Spencer* is to a *protective* cross-appeal," which "permits review of a judgment in the event that an order granting a new trial is *reversed*"]; see generally *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1107 ["California law provides no case-by-case efficiency exception to the one final judgment rule for appealability"]; *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757 ["'exceptions to the one final judgment rule should not be allowed unless clearly mandated'"].) If anything, *Spencer* suggests that, in a situation such as the case at bar, where the trial court grants only a partial judgment notwithstanding the verdict and a new trial, an appellant may file a protective appeal from the judgment—the vacating effect of the new trial order being suspended pending appeal—as a precautionary measure in the event the new trial order is reversed and the judgment, as modified by the partial judgment notwithstanding the verdict, is reinstated. In that event, the order granting the partial

21

judgment notwithstanding the verdict would be reviewable on the appeal from the final judgment.  (See *Walton v. Magno*, *supra*, 25 Cal.App.4th at pp. 1240-1241 ["a final judgment entered following the grant of a motion for judgment notwithstanding the verdict is appealable" under Code of Civil Procedure section 904.1; a grant of partial judgment notwithstanding the verdict with an order of new trial as to damages, is not].)

  We need not decide whether Thompson's notice of appeal from the new trial order, which cited *Beavers* and referred to the partial judgment notwithstanding the verdict, liberally interpreted, encompasses a precautionary appeal from the judgment.  (Cf. *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19-20 [court of appeal erred in dismissing appeal from order denying new trial without first considering whether notice of appeal from that nonappealable order, liberally interpreted, encompassed appeal from judgment].)  Because we affirm the order granting a new trial, there is no final judgment that would permit review of the order granting a partial judgment notwithstanding the verdict.[8]

_____

[8]    We also decline to exercise our discretion to consider the nonreviewable appellate issue as having been brought by way of a writ petition.  (See *Pacific Corporation Group Holdings, LLC v. Keck*, *supra*, 232 Cal.App.4th at pp. 306-307 ["The fact that PCGH has the [statutory] right to bring an interlocutory appeal of the trial court's orders denying its motion for JNOV and granting Keck's motion for new trial does not provide a basis for obtaining appellate review of nonreviewable appellate issues.  Because the parties will have an opportunity to obtain review of all of the issues raised in this appeal by way of an appeal from the final judgment, granting writ review would be inappropriate"].)

3. *The Court Did Not Err in Denying in Part the City's Motion for Judgment Notwithstanding the Verdict*

a. *Standard of review*

A motion for judgment notwithstanding the verdict may be granted "only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support." (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68; *Simers, supra,* 18 Cal.App.5th at p. 1269.) On appeal, "the standard of review is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion." (*Sweatman,* at p. 68.)

b. *The record contains substantial evidence supporting the jury's finding Thompson suffered an adverse employment action*

Government Code section 12940, subdivision (h), makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

To establish retaliation in violation of FEHA, the plaintiff must demonstrate that he or she has been subjected to an adverse employment action that "materially affects the terms, conditions, or privileges of employment." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1051 (*Yanowitz*).)[9] An adverse

---

[9]     Although the term "adverse employment action" does not appear in the language of the FEHA statutes, it "has become a familiar shorthand expression referring to the kind, nature, or

23

employment action includes not only "so-called ultimate employment actions such as termination or demotion, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career. Although a mere offensive utterance or even a pattern of social slights by either the employer or coemployees cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment . . . the phrase 'terms, conditions, or privileges' of employment must be interpreted liberally and with reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment discrimination that the FEHA was intended to provide." (*Id.* at p. 1054.) The determination of what constitutes an adverse employment action "is not, by its nature, susceptible to a mathematically precise test, and the significance of particular types of adverse actions must be evaluated by taking into account the legitimate interests of both the employer and the employee. Minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of

---

degree of adverse action against an employee that will support a cause of action under a relevant provision" of FEHA. (*Yanowitz, supra,* 36 Cal.4th at p. 1049.)

the antidiscrimination provisions of [Government Code] sections 12940(a) and 12940(h)." (*Id.* at pp. 1054-1055.)

The City contends the court erred in denying its motion for judgment notwithstanding the verdict on the ground there was no substantial evidence of an adverse employment action, emphasizing Thompson retained his base salary and title. However, as the court found, there was substantial evidence he was subject to an "organizational demotion" that materially altered the terms, conditions and privileges of employment. He was transferred to a new department where he was stripped of his supervisory responsibilities, including employees to manage and other privileges associated with his former position. He was also instructed to report to a principal engineer, a classification lower than his previous report. Indulging all inferences in favor of the verdict, as we must, substantial evidence supported the jury's finding Thompson suffered an adverse employment action.

The City's related contention there was no substantial evidence supporting the jury's finding the transfer was the result of retaliation, as opposed to a legitimate business reorganization, also fails. As the trial court found when it denied the motion for judgment notwithstanding the verdict on this ground, there was substantial, albeit conflicting, evidence, from which the jury could have inferred Thompson's positive performance review for Isabel and/or testimony at her trial was a substantial motivating reason for the adverse employment action. Awad was angered by Thompson's promotion recommendation for Isabel and criticized Thompson for it in Awad's performance review of Thompson, even though Thompson had made similar recommendations in the past with no consequence. Soon thereafter, Thompson was denied support to address insubordination within his division,

25

became the subject of complaints, and was ultimately transferred to a different department with inferior employment privileges and conditions.  To be sure, there was also evidence supporting the City's position that its criticism of Thompson was valid; that Thompson's actions of sharing his performance review of Isabel with her before obtaining approval from Awad violated City policy; the City supported Thompson by hiring a coach to assist him with his management/people skills; and the City transferred him as the result of a legitimate business reorganization to address dysfunction within his division.  Nonetheless, the jury resolved the conflicts in this evidence against the City.  Indulging all inferences in favor of the jury's verdict, we find ample evidence to support the jury's verdict.  The court did not err in denying the motion for judgment notwithstanding the verdict on this ground.

## DISPOSITION

The orders granting the City's new trial motion and the order denying in part the City's motion for judgment notwithstanding the verdict are affirmed.  The parties are to bear their own costs on appeal.

PERLUSS, P. J.

We concur:

FEUER, J.                              WISE, J.[*]

---

[*]     Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.